NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| IN RE PAULSBORO<br>DERAILMENT CASES | Master Docket No. 13-784 (RBK/KMW)<br>(Doc. No. 66) |
| KAREN ARMISTEAD INDIVIDUALLY<br>and KAREN ARMISTEAD as<br>GUARDIAN AD LITEM FOR<br>AYANNA BUNDY,<br>       Plaintiffs<br>   v.<br>CONSOLIDATED RAIL<br>CORPORATION, et al.<br>       Defendants. | Civil No. 13-2358 (RBK/KMW)<br>(Doc. No. 13)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Consolidated Rail Corporation, Norfolk Southern Railway Company, and CSX Transportation ("Defendants") to dismiss Counts II, IV, and V of the Amended Complaint of Karen Armistead individually and as guardian at litem of Ayanna Bundy ("Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Defendants also move to dismiss Plaintiffs' prayer for attorney's fees.

1

For the reasons stated herein, Defendants' motion to dismiss in part will be **GRANTED** in part, **DENIED** in part.

## I. BACKGROUND

On the morning of November 30, 2012, a freight train derailed and plunged into the Mantua Creek in Paulsboro, New Jersey when the Paulsboro Bridge,[1] a railroad bridge spanning the creek, buckled and collapsed. Compl. at ¶ 16. Four cars became partially submerged in the creek. Id. at ¶ 19. One of the derailed railcars released its cargo of vinyl chloride into the air and water. Id. at ¶ 20.

The bridge is able to swing open so that marine traffic can pass along the creek. Id. at ¶ 15. When swinging back to allow rail travel, the bridge must lock into place with the rails on the adjacent land, after which a green signal appears to indicate that the bridge is safe for trains to cross. Id. at ¶¶ 15, 18. Plaintiffs allege that the train proceeded across the bridge against a red signal and that shortly before the derailment, Defendants had been notified of deficient conditions relating to the operation of the bridge, but failed to correct the problems. Id. at ¶¶ 17-18. Plaintiffs filed suit, alleging that Defendants acted negligently in their operation of the freight train and maintenance of the bridge. Plaintiffs, a cancer survivor and her minor daughter, allege that they were injured by the release of the vinyl chloride and have suffered bodily injuries and property damages as a result. Id. at ¶¶ 20, 25.

## II. LEGAL STANDARD

**A. Choice of Law**

---

[1] This case is consolidated onto a master docket for discovery purposes with a number of other actions related to the derailment described herein. The complaint in one of the other actions consolidated onto the Master Docket refers to the bridge as the "East Jefferson Street Bridge." Compl. at ¶ 20, Hamilton v. Consol. Rail Corp., Docket No. 13-3724.

Because the Court hears this case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, it must apply state substantive law and federal procedural law. Chaimberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000). The choice-of-law rules of the forum state control in this case. Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007). Under New Jersey choice-of-law principles, there is a presumption that the law of the place of injury governs, unless another state has a more significant relationship to the parties and the issues. P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 142-43 (2008). Here, the parties point to no state other than New Jersey whose law would potentially apply to this matter; accordingly, we assume, as the parties have, that New Jersey bears the most significant relationship to the issues now before the Court.

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where

there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  Id.

### III.     DISCUSSION

#### A. Medical Monitoring

Defendants move to dismiss Plaintiffs' claims for Medical Monitoring on the grounds that Plaintiffs have not sufficiently pleaded the elements of this type of claim.

New Jersey recognizes Medical Monitoring as a cause of action, although in many other jurisdictions it is simply a remedy.  Guinan v. A.I. duPont Hosp. for Children, 597 F. Supp. 2d 517, 527 (E.D. Pa. 2009) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 787 (3d Cir. 1994)).  In order to set forth a claim for Medical Monitoring, a plaintiff must "demonstrate, through reliable expert testimony, predicated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease . . . and the value of early diagnosis." Theer v. Philip Carey Co., 133 N.J. 610, 626 (1993) (quoting Ayers v. Jackson Twp., 106 N.J. 557 (1987).  In addition, a plaintiff must be "directly exposed to hazardous substances." Id. at 627.

Defendants argue that Plaintiffs have merely recited the elements of medical monitoring in their complaint.  Plaintiffs argue that the medical monitoring cause of action is proper, and

that the question should properly come before the court after the parties have had an opportunity for discovery, including expert testimony.

In support of their motion to dismiss, Defendants cite an unpublished decision from another district that dismissed medical monitoring claims because the plaintiff failed to state what monitoring he required and which physician prescribed it. Bourgeois v. Exxon Mobile Corp., 2012 U.S. Dist. LEXIS20671, at *5 (E.D. La. Feb. 16, 2012). However, New Jersey requires a demonstration of the elements of a medical monitoring claim through "expert testimony." Theer, 133 N.J. at 621. Although medical monitoring damages are "not easily invoked," id., the Court can only analyze the adequacy of the complaint at this early stage. Because testimony of witnesses cannot be considered at this stage, Plaintiffs have not yet had a fair opportunity to develop the discovery they would require to set forth medical monitoring claims. Plaintiffs have pleaded direct exposure to harmful chemicals, risk of diseases, including cancer, connected to the exposure, and an increase in the chance of the onset of those diseases. Compl. at ¶¶ 121-137).

The other cases cited by Defendant involve dismissal of medical monitoring counts involving exposure to consumer products that were allegedly toxic. See Frye v. L'Oreal USA, Inc., 583 F. Supp. 2d 954 (N.D. Ill. 2008); Baker v. Westinghouse Elec. Corp., 70 F.3d 951 (7th Cir. 1995). Exposure to chemicals from a sudden and accidental spill that required evacuations and led to an investigation by the National Transportation Safety Board ("NTSB") cannot be rationally compared to exposure to consumer products. See ex. A, Pl. Opp'n (NTSB press release). In addition, the cases cited by Defendant do not consider the New Jersey elements for medical monitoring, which require expert testimony. The Court finds that Plaintiffs have sufficiently pled a claim for medical monitoring to survive at this stage of the litigation.

### B. Strict Liability Claims

For the reasons stated in the Court's opinion of this date in <u>Hamilton v. Consol. Rail Corp.</u>, Civ. No. 13-3724, Count IV of Plaintiff's complaint, alleging Strict Liability, will be dismissed with prejudice. However, because Plaintiffs advance some arguments that were not made in the <u>Hamilton</u> briefs, the Court will address these arguments separately here.

Ordinarily, an entity that engages in activity that is considered abnormally dangerous will be held strictly liable for resulting harm connected with the activity, even in the absence of negligent or reckless conduct. The grounds that Defendants rely upon for dismissal of the strict liability count is an exception to this strict liability rule that applies to common carriers who have a public duty to transport cargo. Restatement (Second) of Torts § 521. In addition to their arguments on whether the exception applies, which are substantially similar to those addressed in the <u>Hamilton</u> opinion, Plaintiffs argue that the court should not rule on the strict liability claims at this stage because Defendants have not established that they are a common carrier, nor have they established that they had a public duty to transport the cargo that ultimately spilled. They suggest that discovery is necessary to establish whether these potential bases for dismissal apply here.

Plaintiffs allege in their pleadings that Defendants "owned, maintained, operated, managed and controlled a freight train" that ultimately spilled the chemicals at issue. Compl. at ¶ 11. Black's Law Dictionary defines a common carrier as "[a] commercial enterprise that holds itself out to the public as offering to transport freight or passengers for a fee." Black's Law Dictionary (9th ed. 2009) (defining "carrier"). It is apparent that no discovery is required to determine that Defendants fall within this definition. Plaintiffs themselves have asserted that Defendants were corporations in the business of transporting freight. Regarding Defendants'

public duty to transport the cargo, Black's Law Dictionary also indicates that a "common carrier is generally required by law to transport freight . . . without refusal, if the approved fare or charge is paid."  Id.

New Jersey has long recognized the status of Railroads as common carriers.  See Messenger v. Pennsylvania R.R. Co., 37 N.J.L. 531 (1874) ("Railroad corporations are common carriers . . . ."); Falzarano v. Delaware, L. & W. R.R. Co., 119 N.J.L. 76, 79 (1937) ("A railroad company is a 'common carrier' . . . ."); Village of Ridgefield Park v. N.Y., Susquehanna and Western Ry. Corp., 318 N.J. Super. 385, 392 (1999) ("The railroad is a common carrier engaged in the business of transporting goods in interstate commerce.") (internal quotations omitted).  Other courts have also defined railroads, including Conrail, as common carriers.  See, e.g., Smith v. Consol. Rail Corp., 91 F.3d 144 at *2 (6th Cir. 1996) ("There is no dispute in this case that Conrail is a 'common carrier'").  In cases in which the common carrier exception applies, courts have granted dismissal prior to discovery as to whether a railroad is in fact a common carrier.  See Town of E. Troy v. Soo Line R. Co., 409 F. Supp 326 (E.D. Wis. 1976).

For the reasons stated in the Hamilton opinion, and because there is no factual issue as to which discovery is warranted as to whether Defendants are common carriers, the strict liability claims cannot survive as part of this complaint.

      C.      **Trespass Claims**

In Count V of their complaint, Plaintiffs seek to hold Defendants liable under a theory of trespass, alleging that Defendants committed a trespass upon real property owned by Plaintiffs by spilling chemicals from their railroad car.  For the reasons stated in the opinion of this date filed in Wilson v. Consol Rail. Corp., Civ. No. 12-7586, the trespass count will be dismissed with prejudice.

    **D.**    **Attorney's Fees**

For the reasons stated in the Court's opinion of this date in <u>Hamilton v. Consol. Rail Corp.</u>, Civ. No. 13-3724, Plaintiffs' requests for attorney's fees will be dismissed with prejudice.

**IV.**    **CONCLUSION**

For the reasons set forth above, Defendants' motion will be **GRANTED** as to the counts for trespass and strict liability, and as to Plaintiffs' prayer for attorney's fees. The motion will be **DENIED** as to the count for medical monitoring. An appropriate order shall issue.


Dated: 10/4/2013                                      /s/ Robert B. Kugler
                                                                             ROBERT B. KUGLER
                                                                             United States District Judge